For plaintiff: McElroy & Fallon.

For defendant: Boss, Shepard & McMahon.

| | |
|---|---|
| Abraham Dykstra | |
| vs. | Eq. No. 9502. |
| Everett J. Darling | |

May 21, 1929.

BAKER, J. Heard on bill, answer, replication and proof.

The parties hereto are adjoining land owners in the town of East Providence, the premises of respondent lying southerly and easterly of those of the complainant. The latter brings his bill to compel the respondent to remove a certain dam or dike which obstructs the flow of water across the land of the respondent in a southerly direction from a pond located at the easterly end of the complainant's property.

The complainant contends that the respondent has filled up a natural water-course or drainage channel, thereby causing the water in the pond to back up, overflow the former's property, and cause damage; whereas the respondent maintains that he has the right, for the protection of his own property, to maintain the so-called dam because the place where the water formerly flowed was merely an artificial ditch and not a natural water-course. This appears to be the chief question in the case.

The law governing the rights and duties of adjoining proprietors in regard to water is not entirely uniform. The weight of authority seems to be that the land owner can protect himself against mere surface water which does not flow in any particular channel. On the other hand, it is well settled that if a natural water-course exists, it cannot be interfered with or dammed so as to cause damage to adjoining land owners. The Court also believes that sound reason causes the majority of the jurisdictions to apply

the same general rule to what might be termed natural drainage channels. The rule that water is a common enemy, as has been held in a few states, is not, in the opinion of the Court, the law of this State.

*Farnham, Waters & Water Rights,* Vol. 3, Sec. 889 d, 891.

*Minor* vs. *Nichols,* 24 R. I. 199.

In this case the testimony shows that there is a small natural pond, known as Black Duck Pond, on the southeasterly end of the complainant's property. This pond is fed by the natural slope of the land and through a water-course from swamps lying farther north. There is some conflict in the evidence as to whether there are springs to the north, but it is clear that the pond is seldom, if ever, entirely dry. In its center is a place a few hundred feet square which has been dug out and apparently water is in this part even in the summer. In the winter and spring the pond becomes larger from the rains and melted snows and normally covers from three to five acres of the complainant's land. The region about the pond was formerly wooded but the trees in recent years have been cut off. A land owner to the north of the complainant's property, by piping and by cutting timber, has to some extent hastened the flow of the water into the pond. These facts have a tendency to make the latter somewhat larger than it would be in its natural state.

It is undisputed that for 18 or 20 years water has been flowing from this pond in a southerly direction across what is now land of the respondent, through a ditch or water-course under several small bridges into a brook which ultimately makes its way to Narragansett Bay.

In the fall of last year the respondent filled up portions of the ditch with the result that at the present time said pond covers seven acres or more of the complainant's property and, to

a depth of several inches, a roadway leading easterly, and has caused the water to appear in complainant's cellar for the first time in the 27 years he has lived on the place.

The complainant contends that the natural outlet for this pond is in a southerly direction across the respondent's land, whereas the latter claims that said outlet is to the east about 50 feet north of the house of one Lawrence. There is no question but what this is the point at which the pond is at the present time emptying. It appears equally clear, however, that for the past 18 or 20 years at least very little water has gone easterly from the pond, but practically all of it has gone through the so-called ditch or water-way southerly. Both parties presented a number of witnesses, who through hunting, trapping or woodcutting, have been familiar with the land for a long period of time, in many instances running back 50 years. The complainant's witnesses testified positively that the natural outlet from the pond was southerly across the respondent's land as far back as they could remember, and before the ditch in question was opened or enlarged. The respondent produced several witnesses who testified that the natural outlet to the pond was easterly into the swamps and then ultimately into a brook known as Peck's Brook.

Perhaps the principal witness for the respondent was his brother-in-law, Thomas I. Medbery. He testified that 18 or 20 years ago he opened a ditch through which water has flowed until stopped by the respondent. This ditch extended across the property now owned by the respondent from near the complainant's line to a point where there was an old wooden bridge several hundred feet to the south. From this ditch Mr. Medbery said he dug a lateral ditch in order to drain some of his own land which is now the easterly portion of Chimney Corner Plat.

Apparently the complainant effected a connection with the main ditch which was only a foot or two from his property line and at a point where the water in the pond flowed.

The respondent urges that if it was necessary for Mr. Medbery to construct a ditch to drain his own land, then there could have been no natural outlet to the south. In answer to this, however, it may be noted that it appears in evidence that the easterly boundary of Mr. Medbery's then property was a ditch and a ridge, and that later the respondent levelled a portion of this ridge. It seems to the Court that it may well be that this ridge, so-called, prevented the flow of the water from Mr. Medbery's land and it was not until he had constructed the lateral ditch that the water was enabled to flow off.

After carefully considering all the evidence, in the understanding of which the Court was assisted by a view, it has come to the conclusion that there unquestionably is a natural water-course leading southerly from the old bridge to a point near Willett avenue, where it joins another brook and then flows into Narragansett Bay. The question would seem to be whether there was a natural water-course or drainage channel leading south from the pond to a point near this old bridge in substantially the place where Mr. Medbery opened the ditch 18 or 20 years ago.

After fully considering all the evidence the Court finds that there were two natural outlets to Black Duck Pond, one to the south and one to the east, but that the water would flow first to the south and would not flow toward the east unless the pond became very full. The complainant's witnesses all testified positively to such a water-course or natural drainage channel leading southerly from the pond. One of the witnesses referred to it as a gully. The fact that bridges were nec-

essary south of the pond would seem to indicate a natural flow of water in that direction. In maps of the United States Geological Survey from surveys made about 40 years ago, there would appear to be a stream leading in a southerly direction from the swamp district approximately where Black Duck Pond now is. Further, Mr. Thomas I. Medbery testified in cross-examination that he remembered the old ditch and that before he dug his ditch water would run there in a normal year for six or seven months.

It would seem to the Court clear from the evidence that this witness did not dig an entirely new ditch but merely cleared out and enlarged an existing channel in order to assist or hasten the flow of water from the pond, and particularly from his own land.

Having come to the conclusion that there was a natural drainage channel for water leading southerly from the pond, the Court finds that the respondent was not entitled to obstruct it with a dam or dike and that the complainant is entitled to the relief prayed for in his bill to the extent of having the natural flow of the water from the pond restored.

*Farnham, Waters & Water Rights,* Vol. 3, Sec. 889 g.

For complainant: Everett D. Higgins.

For respondent: Edward M. and J. J. Sullivan.